**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CELLCO PARTNERSHIP doing business as**
**Verizon Wireless,**

                                        **Plaintiff,**


                    **v.**                                        **1:17-CV-273**
                                                                  **(FJS/DJS)**
**TOWN OF CLIFTON PARK, NEW YORK;**
**THE ZONING BOARD OF APPEALS OF THE**
**TOWN OF CLIFTON PARK; THE PLANNING**
**BOARD OF THE TOWN OF CLIFTON PARK;**
**THE DEPARTMENT OF PLANNING OF THE**
**TOWN OF CLIFTON PARK; and THE**
**DEPARTMENT OF BUILDING AND**
**DEVELOPMENT OF THE TOWN OF**
**CLIFTON PARK,**

                                        **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**YOUNG/SOMMER LLC**                          **DAVID C. BRENNAN, ESQ.**
Executive Woods                               **KRISTIN CARTER ROWE, ESQ.**
Five Palisades Drive, Suite 300
Albany, New York 12205
Attorneys for Plaintiff

**THE BARBER LAW FIRM**                       **PETER G. BARBER, ESQ.**
P.O. Box 1521
Guilderland, New York 12084
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Plaintiff's motion for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure. *See* Dkt. No. 24.

## II. BACKGROUND

Plaintiff commenced this action on March 8, 2017, after Defendants (referred to collectively as "Defendant Town") "denied its application for local zoning approvals to construct and operate a new wireless telecommunications facility on a parcel of land in an area of the Town experiencing a significant gap in service[.]" *See* Dkt. No. 1, Complaint, at ¶ 2. In its complaint, Plaintiff asserted four causes of action: (1) Defendant Town "unlawfully prohibited the provision of personal wireless services in violation of the [Telecommunications Act of 1996 ("TCA")], 47 U.S.C. § 332(c)(7)(B)(i)(II)," *see id.* at ¶¶ 155-167; (2) Defendant Town "unlawfully denied [Plaintiff]'s application without substantial evidence in the written record in violation of the TCA, 47 U.S.C. § 332(c)(7)(B)(iii)," *see id.* at ¶¶ 168-175; (3) Defendant Town "is federally preempted from denying [Plaintiff]'s application on technical grounds," *see id.* at ¶¶ 176-195; and (4) Defendant Town's decision to deny Plaintiff's application "was not supported by substantial evidence in the record, was arbitrary and capricious, was an abuse of discretion, was affected by an error of law and/or was made in violation of lawful procedure" pursuant to Article 78, *see id.* at ¶¶ 196-199.

Based on these allegations, Plaintiff seeks an Order declaring (1) "that Defendants' denial of [its] Application prohibits or has the effect of prohibiting the provision of wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)," (2) "that Defendants' denial of [its] Application constitutes a violation of 47 U.S.C. § 332(c)(7)(B)(iii) in that it is not supported by substantial evidence contained in the written record," (3) "that . . . Defendants are federally preempted from regulating the technological and operational standards of wireless carriers and are therefore

preempted from denying [Plaintiff]'s Application based on their independent determinations or assessments concerning the wisdom or need for advanced wireless technologies authorized, approved and/or licensed by the [Federal Communications Commission ("FCC")], such as [Plaintiff]'s advanced 4G LTE services," (4) "that . . . Defendants are in violation of Federal and New York State law," and (5) "that . . . Defendants' denial of [Plaintiff]'s Application was affected by an error of law, was arbitrary and capricious and an abuse of discretion, and was not supported by substantial evidence based on the entire record[.]" *See id.* at WHEREFORE Clause. In addition, Plaintiff seeks an Order "directing . . . Defendants to immediately issue all approvals and permits necessary to allow construction and operation of the proposed Communications Facility, including (without limitation) all building permits, site plan approvals, special use permits, and variances" and "[a]warding [Plaintiff] the costs, disbursements, and expenses of this action, including reasonable attorneys' fees[.]" *See id.*

  Pending before the Court is Plaintiff's motion for summary judgment with regard to all of its claims on the ground that Defendant "Town's denial of [its] application should be overturned as a violation of the TCA and Article 78 of the CPLR, with the issuance of an injunction ordering [Defendant] Town to issue all necessary variances, permits and approvals to allow [Plaintiff] to immediately commence construction of [its proposed] Facility and to close the identified gap in service." *See* Dkt. No. 24-8, Plaintiff's Memorandum of Law, at 6-7.[1] Defendants oppose Plaintiff's motion and request that, if necessary, the Court return the matter to Defendant "Town for further

---

[1] All references to page numbers of documents in the record are to the page numbers that the Court's Electronic Filing System generates, except for the page numbers of any transcripts in the record, in which case the references to the page numbers in the transcripts are to the actual page numbers in the transcripts.

administrative proceedings." *See* Dkt. No. 27-16, Defendant Town's Memorandum of Law, at 4.


## III. DISCUSSION

**A.      Standard of review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party

"bears the burden of establishing that no genuine issue of material fact exists." *Eastman Mach. Co.,*

*Inc. v. United States*, 841 F.2d 469, 473 (2d Cir. 1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970)).  If the moving party satisfies its burden,

then the non-movant "'must set forth specific facts showing that there is a genuine issue for trial.'"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted).  A

genuine issue of material fact exists if "'the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'"  *Giordano v. City of New York*, 274 F.3d 740, 746-47 (2d Cir.

2001) (quotation omitted).


**B.      Section 332(c)(7)'s substantial evidence requirement**

Under § 332(c)(7) of the TCA, "Congress preserved the authority of state and local

governments over zoning and land use issues, but imposed limitations on that authority." *N.Y.*

*SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 101 (2d Cir. 2010) (citing 47 U.S.C.

§ 332(c)(7) (which provides that, "[e]xcept as provided in this paragraph, nothing in this chapter

shall limit or affect the authority of a . . . local government . . . over decisions regarding the

placement, construction, and modification of personal wireless service facilities")).  However, given Congress' goal of "'provid[ing] for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services . . . by opening all telecommunications markets to competition . . .'" 47 U.S.C. § 332(c)(7) also "limits the state and local government's authority to deny construction of wireless telecommunications towers, *see* [47 U.S.C.] § 332(c)(7)(B)(i), and regulates how such decisions must be made, *see* [47 U.S.C.] §§ 332(c)(7)(B)(ii)-(iv)." *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 637 (2d Cir. 1999).  Thus, courts review "'denials subject to the TCA . . . more closely' than . . . other types of zoning decisions to which federal courts generally accord great deference." *Id.* (quoting *Cellular Tel. Co.,* 166 F.3d at 493).

"A denial of a request to build [a] wireless facilit[y] must be 'in writing and supported by substantial evidence contained in a written record[.]'" *Id.* at 638 (quoting [47 U.S.C.] § 332(c)(7)(B)(iii)).  Specifically, a local government must articulate, with sufficient clarity, any reasons for denying an application in a written decision "'so that no one has to parse a record and guess which of the things [the local government] mentioned therein was ultimately found persuasive.'" *N.Y. SMSA Ltd. P'ship v. Town of Oyster Bay*, No. 11-CV-3077, 2013 WL 4495183, *20 n.11 (E.D.N.Y. Aug. 16, 2013)  (quoting *Omnipoint Commc'ns, Inc. v . Town of LaGrange*, 658 F. Supp. 2d 539, 554 (S.D.N.Y. 2009)) (other citation omitted).

When determining whether there was "substantial evidence" to support a local government's denial of an application, courts "must view the record in its entirety, including evidence opposed to the [local government]'s view, and 'may neither engage in [its] own fact-finding nor supplant the [local government]'s reasonable determinations.'" *T-Mobile Northeast LLC v. Town of Islip*, 893 F.

Supp. 2d 338, 354 (E.D.N.Y. 2012) (quoting *Town of Oyster Bay*, 166 F.3d at 494). Additionally, when reviewing the decision, "courts 'must employ "the traditional standard used for judicial review of agency actions."'" *Id.* (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999) (quoting H.R. Conf. No. 104-458, at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 223)). Under this standard, courts have generally construed substantial evidence "'to mean less than a preponderance, but more than a scintilla of evidence.'" *Town of Oyster Bay*, 2013 WL 4495183, at *11 (quoting *Omnipoint Commc'ns*, 430 F.3d at 533 (quoting *Cellular Tel.*, 166 F.3d at 494)) (other citation omitted); *see also Willoth*, 176 F.3d at 638 (stating that substantial evidence "'"means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"'" (quotation omitted)). Moreover, "local and state zoning laws govern the weight to be given the evidence." *Town of Oyster Bay*, 166 F.3d at 494. Therefore, although "[t]he TCA clearly establishes procedural requirements that local boards must comply with in evaluating cell site applications . . . the TCA does not 'affect or encroach upon the substantive standards to be applied under established principles of state and local law.'" *Id.* (quoting *Cellular Telephone Co. v. Zoning Bd. of Adjustment*, 24 F. Supp. 2d 359, 366 (D.N.J. 1998)) (footnote omitted).

The record in this case consists of the following: (1) Plaintiff's original and amended application, *see* Dkt. No. 27-2, Exhibit "A," Plaintiff's Initial Application; Dkt. No. 27-3, Exhibit "B," Plaintiff's Amended Application; (2) numerous petitions in the form of emails and letters opposing and supporting construction of the facility, *see* Dkt. No. 27-8, Exhibit "G," ZBA Comments; Dkt. No. 27-11 Exhibit "J," Plaintiff Board Comments; (3) the negative SEQRA Determination, *see* Dkt. No. 27-7, Exhibit "F"; (4) the Planning Board's report, *see* Dkt. No. 27-10, Exhibit "I"; (5) the ZBA's minutes and hearing transcript discussing the project, *see* Dkt. No. 27-5,

Exhibit "D," ZBA Minutes; Dkt. No. 27-9, Exhibit "H," the ZBA Transcript; and (6) four reports that Defendant Town's expert Mr. Johnson prepared regarding the project, *see* Dkt. No. 27-13.

Defendant Town memorialized its decision in a "Notice of Decision," in which it denied Plaintiff's application, concluding that Plaintiff's request for a use and area variance would produce "an undesirable change or detriment to nearby properties." *See* Dkt. No. 27-6, Notice of Decision, at 1. Defendant Town also found that Plaintiff "had not met the traditional standard for use variances, as codified in Section 208-109(C)(2) of the Town's Code[.]" *See* Dkt. No. 24-3, Plaintiff's Statement of Facts, at ¶ 135 (citing Brennan Aff., ¶ 94) (other citation omitted); *see also* Dkt. No. 27-6, Notice of Decision.

Finally, the applicable local law in this case is the Town Code, which sets forth the requirements for obtaining a special use permit or variance to construct a telecommunications facility like the one that Plaintiff proposed. In addition, New York State law provides that wireless service providers such as Plaintiff "are afforded the status of public utilities for the purposes of zoning applications[.]" *Town of Islip*, 893 F. Supp. 2d at 355 (citing *Cellular Tel. Co. v. Rosenberg*, 82 N.Y.2d 364, 604 N.Y.S.2d 895, 624 N.E.2d 890 (1993)). Therefore, zoning boards or other reviewing agencies must evaluate applications for telecommunications facilities under the "'public necessity' standard established in *Consolidated Edison Co. v. Hoffman*, 43 N.Y.2d 598, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978)." *Id.* This means that the reviewing agency "must evaluate a cellular telephone company's application . . . on the basis of whether the public utility has shown a need for its facilities and whether the needs of the broader public would be served by [approving the application]." *Sprint Spectrum L.P. v. Bd. of Zoning Appeals of Town of Brookhaven*, 244 F. Supp. 2d 108, 114 (E.D.N.Y. 2003) (citing *Rosenberg*, 82 N.Y.2d at 371-72, 604 N.Y.S.2d 895, 624

N.E.2d 990 (citing *Consol. Edison Co. v. Hoffman*, 43 N.Y.2d 598, 611, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978))).

Courts have interpreted the "public necessity" standard to require that wireless service providers establish "'"(1) that there are gaps in service, (2) that the location of the proposed facility will remedy those gaps and (3) that the facility presents a minimal intrusion on the community[.]"'" *New Cingular Wireless PCS, LLC v. Town of Fenton*, 843 F. Supp. 2d 236, 245 (N.D.N.Y. 2012) (quotation omitted). "As a general rule, if the public utility makes the required showing, which necessarily means the record is devoid of substantial evidence to support a denial, the [application] must issue." *Town of Islip*, 893 F. Supp. 2d 355 (citing *Town of LaGrange*, 658 F. Supp. 2d at 555). However, "'[i]f the Court finds that even one reason given for the denial is supported by substantial evidence, the decision of the local zoning body cannot be disturbed.'" *Id.* (quoting *New York SMSA L. P. v. Town of Oyster Bay Zoning Bd. of Appeals*, No. 08-CV-4833, 2010 WL 3937277, *4 (E.D.N.Y. Sept. 30, 2010)).

There is no dispute that Plaintiff satisfies the first two elements of the "public necessity" standard, *i.e.*, (1) there is a gap in service in the Gap Area and (2) Plaintiff's proposed facility will remedy that gap. *See* Dkt. No. 27-16, Defendant Town's Memorandum of Law, at 8-9 (conceding that Plaintiff has established a "significant gap in wireless coverage in the Gap Area" and that "the proposed new communications tower would satisfy the need"); Dkt. No. 27, Defendant Town's Responsive Statement of Material Facts, at ¶ 79 (admitting that Parcel C, the proposed location for the facility, "satisfies . . . coverage and capacity objectives"). However, Defendant Town argues that the erection of the facility on Parcel C will present more than a minimal intrusion on the community and that Plaintiff could have employed CRAN technology as a less intrusive means of

meeting the needs of the Gap Area. *See* Dkt. No. 27-16, Defendant Town's Memorandum of Law, at 9-10, 16.

Courts that have addressed whether proposed telecommunications facilities present more than a minimal intrusion on a community have considered factors such as whether "(1) the proposed facility would affect the aesthetics of the community; (2) the proposed facility would affect property values in the community; (3) [the provider] failed to fully consider less intrusive alternatives; and (4) the impact of the proposed facility on the health and safety of the community." *Town of Oyster Bay*, 2013 WL 4495183, at *14.

### 1. Effect of the proposed facility on the aesthetics of the community

"Objections on aesthetic grounds must 'articulate specifically how the proposed cell sites would have an adverse aesthetic impact on the community.'" *Town of Islip*, 893 F. Supp. 2d at 358 (quoting *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 495 (2d Cir. 1999)). Thus, "[t]o deny a siting application on aesthetic grounds, there must be substantial evidence: (1) that 'residents will be able even to see the antennae' and (2) there will be an actual 'negative visual impact on the community.'" *Id.* (quotation omitted). Moreover, "[i]t is well-settled that a 'few generalized expressions of concern with "aesthetics" cannot serve as substantial evidence on which the Town could base the denials.'" *Id.* (quotation omitted). In addition, "because 'it would be a rare event to be able to buffer a communications tower so that it is not visible at all,' . . . and '[f]ew people would argue that telecommunications towers are aesthetically pleasing', courts tend to require objective evidence of a negative visual impact that is 'grounded in the facts of the case.' . . ." *Id.* 359 (internal quotations omitted). In other words, "[s]peculative concerns about the 'potential

-9-

visibility' of a proposed tower are unlikely to constitute substantial evidence for denying an application absent some form of objective support in the form of 'photographs, site plans, surveys, and the like.'" *Id*. at 358 (quoting *Green Mountain Realty Corp. v. Leonard*, 688 F.3d 40, 54 (1st Cir. 2012)) (other citation omitted).  This is particularly the case when the service provider provides expert testimony, technical reports, and other objective data demonstrating that the facility will blend in with the surrounding community.  *See N.Y. SMSA Ltd. P'ship v. Vill. of Floral Park Bd. of Trs.*, 812 F. Supp. 2d 143, 157-58 (E.D.N.Y. 2011) (citation omitted).  However, under the TCA, a reviewing court "can find that aesthetics qualify as a permissible ground for a denial of [an application] only if [it] can conclude that there was 'more than a mere scintilla' of evidence, *Universal Camera*, 340 U.S. at 477, 71 S. Ct. 456, before the [Town] Board on the negative visual impact of the [proposed facility]." *Town of Oyster Bay*, 166 F.3d at 495 (footnote omitted); *see also Omnipoint Commc'ns, Inc. b. City of White Plains*, 430 F.3d 529, 533-34 (2d Cir. 2005) (finding that the City's denial of the plaintiff's application to construct a 150-foot communications tower on aesthetic grounds was supported by "reasonable and substantial evidence" because the proposed "tower would rise to three times the height of the tallest evergreen tree and would be half again as tall as any other tree in the area" and the "aesthetic objections raised by the neighbors who know the local terrain and the sightlines of their own homes").

In its Notice of Decision, Defendant Town stated that, if it were to grant Plaintiff a variance to erect a telecommunications tower in an R-1 residential zone, the proposed facility would create an  "undesirable change or detriment to nearby properties[.]"  *See* Dkt. No. 27-6, Notice of Decision, at 1.  Apart from this one general statement, however, the Notice of Decision does not provide any information about what Defendant Town relied on to reach this conclusion other than

the fact that the tower would be built in a residential zone, which would require a use variance. *See id.*

Nonetheless, the record does contain multiple petitions from residents who objected to the facility because of its purported negative aesthetic impact, the statement of one of the ZBA members that the ZBA had received "at least 50" emails and/or letters in opposition to the project, *see* Dkt. No., 27-9, ZBA Tr., at 57:21-58:18; Dkt. No. 27-8, ZBA Comments; Dkt. No. 27-11, Planning Board Comments; and the testimony of several residents at the ZBA hearing that the facility would be visible from several areas of Defendant Town, *see* Dkt. No. 27-9, ZBA Tr., at 64:16-65:14; 68:5-23; 72:13-15; 80:7-20. Therefore, the Court must consider whether there is sufficient evidence in the record to support Defendant Town's finding that the facility would pose an **actual** "negative visual impact on the community."

The record indicates that Plaintiff's proposed facility is a 100-foot tall stealth monopine tree, purposefully designed to blend in with the surrounding mature trees on the site. *See* Dkt. No. 24-3, Plaintiff's Statement of Facts, at ¶ 27 (citing Brennan Aff., ¶ 76) (other citation omitted); ¶ 33 (citing Brennan Aff., ¶ 17) (other citation omitted). Additionally, after conducting a "professional drone test," Plaintiff confirmed that the trees around the facility average 85-feet in height, with one tree reaching 100-feet, the same height as the proposed tower. *See id.* at ¶ 27 (citing Brennan Aff., ¶ 76) (other citation omitted). Plaintiff also conducted multiple visual impact studies to determine from which areas in Defendant Town the facility would be visible and demonstrated that it "w[ould] be largely invisible to the surrounding community and w[ould] have a minimal visual or aesthetic impact." *See* Dkt. No. 24-8, Plaintiff's Memorandum of Law, at 40 (citing [Plaintiff's Statement of Facts] at ¶¶ 88-105, 133) (other citation omitted). Specifically, Plaintiff conducted two separate

balloon tests and photo-simulations of the facility, both as originally proposed and later as the modified stealth monopine structure, and confirmed that the structure would be "substantially invisible." *See id.*; Dkt. No. 24-3, Plaintiff's Statement of Facts, at ¶¶ 89-105. Plaintiff also conducted a "worst-case scenario" visual impact study, *i.e.*, "in the winter season during 100% leaf-off conditions" and maximum potential visibility, and still demonstrated that the facility would be substantially screened from view. *See* Dkt. No. 24-8, Plaintiff's Memorandum of Law, at 40; Dkt. No. 24-3, Plaintiff's Statement of Facts, at ¶ 88 (citing Brennan Aff., ¶ 53) (other citation omitted). Furthermore, after neighboring residents threatened to cut down trees on their properties to eliminate the "natural screening" the trees would provide to camouflage the facility, Plaintiff conducted additional tests that supported its earlier findings. *See* Dkt. No. 24-8, Plaintiff's Memorandum of Law, at 40 (citation omitted); Dkt. No. 24-3, Plaintiff's Statement of Facts, at ¶¶ 100-102 (citing Brennan Aff., ¶¶ 62-64) (other citations omitted). Moreover, notwithstanding residents' photographs of Plaintiff's balloon test, which showed that the tower would be visible from their properties, Plaintiff convincingly explained that, although the red balloon used during the test was admittedly visible through the trees and from different locations, photo simulations of the stealth monopine, designed so as to resemble the surrounding trees, conclusively demonstrated that the tower would be "substantially screened or invisible to the majority of the locations." *See* Dkt. No. 27-9, ZBA Tr., at 8:23-9:2.

Finally, as Plaintiff points out, Defendant Town's "expert agreed that '[t]he methodology [Plaintiff employed] 'for the visual resource evaluation [was] an acceptable, commonly used methodology for evaluation of potential visual impacts of an action or project and [was] generally consistent with industry practices.'" *See* Dkt. No. 24-8, Plaintiff's Memorandum of Law, at 40

(quoting [Plaintiff's Statement of Facts] at ¶ 95; Brennan Aff., ¶ 58) (other citation omitted).

Furthermore, Defendant Town did not object to or challenge the conclusions Plaintiff reached as a

result of its visual impact studies. *See* Dkt. No. 24-8, Plaintiff's Memorandum of Law, at 41 (citing

[Plaintiff's Statement of Facts] at ¶¶ 95, 112). Moreover, as Plaintiff points out, Defendant Town

"did not conduct any expert assessment of its own regarding visual or market value impacts" to

controvert Plaintiff's findings. *See id.* (citing [Plaintiff's Statement of Facts] at ¶¶ 95, 112). Instead,

Defendant Town, "after noting [Plaintiff's] visual mitigation efforts . . ., found under SEQRA that

the Facility would *not* 'result in significant adverse environmental impacts.'" *See id.* (quoting

[Plaintiff's Statement of Facts] at ¶ 133) (other citation omitted). In addition, the Saratoga County

Planning Board issued a decision in which it concluded that Plaintiff's project would have "No

Significant County Wide or Inter Community Impacts." *See* Dkt. No. 27-8, ZBA Comments, at 54.

After reviewing the entire record, the Court finds that, despite the comments of some of

Defendant Town's residents regarding the visual impact of the proposed facility, the objective

evidence convincingly demonstrates that Plaintiff's proposed structure would not have an actual

"negative visual impact" on the community. Therefore, the Court finds that there is not substantial

evidence in the record to support Defendant Town's conclusion that Plaintiff's proposed structure

would be more than minimally intrusive on the aesthetics of the community.

### 2. Effect of Plaintiff's proposed facility on nearby property values

"'[A] few generalized concerns about a potential decrease in property values" do not

constitute "substantial evidence" sufficient to support a decision denying construction of a

telecommunications facility. *MetroPCS N.Y., LLC v. Vill. of E. Hills*, 764 F. Supp. 2d 441, 452-53

(E.D.N.Y. 2011) (quotation and other citations omitted); *see also Vill. of Floral Park Bd. of Trs.*, 812 F. Supp. 2d at 157 (noting that, "[a]lthough a few residents raised concerns about property values, these were simply conclusory assertions that property values would decrease, which [did] not amount to substantial evidence" (citation omitted)).

Defendant Town concedes that its residents did not provide "any appraisal reports or objective evidence" to support their allegations that the proposed facility would have a negative impact on property values. *See* Dkt. No. 24-3, Plaintiff's Statement of Facts, at ¶ 112 (citing Brennan Aff., ¶ 71) (other citation omitted). Moreover, in its Notice of Decision, Defendant Town did not include "reduced property values" as a reason for denying Plaintiff's application. Therefore, the Court finds that there is not substantial evidence in the written record to support Defendant Town's finding that the facility would have more than a "minimally intrusive" impact on the community due to a decrease in property values.

### 3. Alternative, less intrusive sites

Mere speculation that alternative sites were more appropriate or that a wireless provider could "have tried harder" to find other, less intrusive locations to construct its facility do not constitute "substantial evidence" on which a defendant may rely to demonstrate that the facility would have more than a "minimal intrusion" on the community. *See Town of Oyster Bay*, 2013 WL 4495183, at *18. Furthermore, courts have concluded that wireless providers do not need to consider "every potential alternative" to satisfy the "least restrictive means test." *Id.* To the contrary, "[t]he law only requires [the provider] to engage in 'a good faith effort to evaluate alternative sites.'" *Id.* (quotation and other citations omitted).

Plaintiff evaluated seven other potential sites, including those Defendant Town proposed, such as Parcel B, and provided detailed reasons why each site would be unsuitable for the facility. For example, Plaintiff's Radio Frequency ("RF") Design Engineer explained that Plaintiff could not feasibly use Defendant Town's transfer station at Vischer Ferry Road, a preexisting structure, "due to its distance from the Gap Area, combined with the rolling terrain and dense tree canopy," which would prevent service from extending "far enough east to provide coverage to the whole of the Gap Area." *See* Dkt. No. 24-1, Andras Affidavit, at ¶ 66 (citation omitted). In addition, Plaintiff provided detailed reasons why it had eliminated other alternative sites from consideration. For example, Plaintiff explained that it had removed Parcel D from consideration due to "the presence of significant wetlands on the property and the need to cross them for site access," *see id.* at ¶ 69; Parcel E was not feasible because "that property ha[d] been subdivided and [was] being built out as a new housing community," *see id.*; Parcel A, although ideal, was unsuitable "because of its close proximity to homes along several residential roads [and] because it would be far more visible over a longer distance than the proposed Facility at the Site," *see id.* at ¶ 70, in addition to significant zoning issues associated with building on Parcel A, *see id.*; and Parcel B "was not suitable because, despite multiple conversations and correspondence with the property owners, they were not willing to lease the property for the siting of a cell tower," *see id.* (citation omitted).

For all these reasons, the Court finds that there is not substantial evidence in the written record to support Defendant Town's denial of Plaintiff's application based on the argument that Plaintiff should have chosen another, less intrusive site for its facility.

### *4. Health concerns*

"[T]he mere fact that members of the community raised health concerns does not violate the TCA" and therefore cannot constitute substantial evidence to support the denial of a cell tower application. *Town of Islip*, 893 F. Supp. 2d at 353-54 (citation omitted). In fact, the TCA expressly prohibits zoning boards from denying an application for a telecommunications facility on community health or safety grounds if the application is compliant with FCC emission regulation levels. *See* 47 U.S.C. § 332(c)(7)(B)(iv) (providing that "[n]o . . . local government . . . may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions"); *see also Nextel of N.Y., Inc. v. City of Mt. Vernon*, 361 F. Supp. 2d 336, 341 (S.D.N.Y. 2005) (stating that "health concerns expressed by residents cannot constitute substantial evidence" (citing 47 U.S.C. § 332(c)(7)(B)(iv))).

Plaintiff demonstrated, and Defendant Town did not dispute, that the proposed facility would generate emissions levels far below permissible levels and would be compliant with FCC emission regulations. *See* Dkt. No. 24-3, Plaintiff's Statement of Facts, at ¶ 113 (citing Brennan Aff., ¶ 72) (other citation omitted). Thus, the Court finds that Defendant Town's residents' generalized health concerns cannot form the basis for Defendant Town's denial of Plaintiff's application.

### *5. Post hoc rationalizations*

In addition to the reason that Defendant Town provided in its Notice of Decision denying

Plaintiff's application, it now argues that it denied the application in part because Plaintiff did not show that Parcel B, the location Defendant Town asserted was the "most feasible" location for the project site, was not available. *See* Dkt. No. 27, Defendant Town's Responsive Statement of Facts, at ¶ 134 (citing McCarthy Aff. Exh. A at R107). Additionally, Defendant Town asserts that Plaintiff "failed to disclose or discuss the use of [CRAN technology] which [Plaintiff] has used in other residential areas" across New York State. *See id.*; Dkt. No. 27 at 44-50, Defendant Town's Statement of Additional Facts, at ¶ 17 (citing Johnson Aff. ¶ 17). Specifically, Defendant Town claims that "[t]he Gap Area, including the area around [Plaintiff's] proposed new tower, has above ground utility poles that could serve as the support for the multiple micro cells in a CRAN network." *See* Dkt. No. 27, Defendant Town's Statement of Additional Facts, at ¶ 14 (citing Johnson Aff., ¶ 20).

The Court rejects these "post-hoc rationalizations" for Defendant Town's decision. *See New Cingular Wireless PCS, LLC v. Town of Fenton*, 843 F. Supp. 2d 236, 247 (N.D.N.Y. 2012) (noting that "a *post hoc* rationalization . . . cannot . . . be raised to defend the ZBA's action" (citations omitted)); *see also Town of Islip*, 893 F. Supp. 2d at 367 (stating that "'[a] board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on different grounds'" quotation and other citations omitted)).

There is nothing in Defendant Town's Notice of Decision to indicate that it denied Plaintiff's application for either of the two aforementioned reasons. With regard to Parcel B, although Defendant Town questioned the availability of Parcel B during the ZBA hearing discussing Plaintiff's application, *see* Dkt. No. 27-9, ZBA Tr., at 47:25-48:5, there is nothing in the record to indicate that Defendant Town's ZBA as a whole or any of its members rejected Plaintiff's

application because of the availability of other "more feasible" or "less intrusive" site locations. Rather, the Notice of Decision merely reflects a concern regarding the aesthetic impact of the facility, *i.e.*, that the facility would produce "an undesirable change or detriment to nearby properties," *see* Dkt. No. 27-6, Notice of Decision, at 1, and that telecommunications facilities like the one Plaintiff proposed are prohibited in residential zones, *see id.* at 2. Moreover, there is no other contemporaneous writing that indicates that Defendant Town relied on this reason to deny Plaintiff's application. Therefore, the Court finds that Defendant Town's assertion that it denied Plaintiff's application, in part, because Plaintiff had not shown that Parcel B, an allegedly "more feasible" location than the selected Parcel C, was not available, amounts to an impermissible *post hoc* rationalization. Accordingly, the Court concludes that the purported availability or feasibility of Parcel B cannot serve as a basis for denying Plaintiff's application.

Similarly, Defendant Town did not mention CRAN technology at any time prior to its opposition to the pending motion, and there is nothing in the written record to indicate that Defendant Town's ZBA's denial of Plaintiff's application had anything to do with CRAN technology or Plaintiff's failure to consider the use of CRAN technology in Defendant Town. It is clear that Defendant Town's attempt to justify its February 2017 denial of Plaintiff's application on this basis is nothing more than an impermissible *post hoc* rationalization for its decision given that Plaintiff first proposed to use CRAN technology in another town in April 2017, "several months *after* [Defendant] Town issued its denial." *See* Dkt. No. 30, Plaintiff's Reply Memorandum of Law, at 6 (citing Affirmation of Thomas McCarthy, dated October 10, 2017 ("McCarthy Aff."), at ¶ 22; Affirmation of William P. Johnson, dated October 10, 2017 ("Johnson Aff."), at ¶¶ 18-19)) (other citations omitted). Therefore, this reason could not have possibly informed Defendant Town's

decision. Accordingly, the Court rejects Defendant Town's assertion that Plaintiff should have proposed CRAN technology as an alternative to the chosen facility because it is an impermissible *post hoc* rationalization that did not form the basis for denying Plaintiff's application.

### 6. Summary

In sum, after reviewing the entire written record, the Court concludes that Defendant Town has failed to raise a genuine issue of material fact regarding whether there is "substantial evidence" in the record to support its denial of Plaintiff's application. To the contrary, the record demonstrates that Plaintiff has satisfied the "public necessity" standard because its proposed facility would only create a "minimal intrusion" on the community. Accordingly, the Court grants Plaintiff's motion for summary judgment.[2]

**C.      The effective prohibition provision of the TCA**

Section 332(c)(7)(B)(i)(II) of the TCA limits the power of local governments to deny the construction of wireless telecommunications facilities and subjects their decisions to judicial review. *See Willoth*, 176 F.3d at 637 (citations omitted). One such limitation, the so-called

---

[2] Since the Court has granted Plaintiff's motion for summary judgment with regard to its TCA claim, it need not consider Plaintiff's Article 78 claim separately. *See Town of Oyster Bay*, 2013 WL 4495183, at *12 (stating that "[c]ourts have found that[,] where lack of substantial evidence is established under [the] TCA, the determination will also be arbitrary and capricious and lack substantial evidence under Article 78" (citing *Town of Islip*, 893 F. Supp. 2d at 373 ("Although 'Article 78 imposes its own requirement that local decisions be supported by substantial evidence[,]' the test for relief from a zoning board's decision under Article 78 'is essentially the same as that under the TCA'" (citations omitted))) (other citations omitted). Therefore, the Court grants Plaintiff's motion for summary judgment with regard to its Article 78 claim.

"effective prohibition provision," provides that "local regulation of 'the placement, construction, and modification of personal wireless service facilities . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services.'" *Id.* at 638 (quoting 47 U.S.C. § 332(c)(7)(B)(i)). In *Town of East Fishkill*, the court noted that "the Second Circuit ha[d] held that the TCA's 'ban on prohibiting personal wireless service precludes denying an application for a facility that is the least intrusive means of closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines.'" *Town of E. Fishkill*, 84 F. Supp. 3d at 296 (quoting *Willoth*, 176 F.3d at 643). In other words, "[u]nder the *Willoth* standard . . . a plaintiff will prevail on an effective prohibition claim 'if it shows both that a significant gap exists in wireless coverage and that its proposed facility is the least intrusive means to close that gap.'" *Id.* at 296-97 (quoting *Town of Ramapo*, 701 F. Supp. 2d at 456).[3]

"[I]f an applicant's proposal is not the least intrusive means of closing a significant gap in coverage, a 'local government may reject [the] application . . . without thereby prohibiting personal wireless services. . . .'" *T-Mobile Northeast LLC v. Town of Ramapo*, 701 F. Supp. 2d 446, 456-57 (S.D.N.Y. 2009) (quoting [*Willoth*, 176 F.3d at 643]). For example, in *Willoth*, the court suggested that a plaintiff may fail to show that its proposed cell tower facility is the least intrusive means to satisfy the coverage gap if the record demonstrates that there is a "less sensitive site" available for the facility's construction, if the plaintiff could "reduce the tower height," or if it could use an already "preexisting structure" to address the gap in wireless coverage. *Willoth*, 176 F.3d at 643 (citations omitted). However, "[w]here the plaintiff's existing proposal is the only feasible plan to

---

[3] As previously noted, there is no dispute that a significant gap exists in wireless coverage; therefore, the Court need only consider the parties' arguments regarding the issue of whether the proposed facility is the least intrusive means to close that gap.

close the relevant coverage gap, it seems evident that no less intrusive means is possible, and the application must be granted." *Town of Ramapo*, 701 F. Supp. 2d at 457.

In *Town of Ramapo*, the court found that the plaintiff had presented "overwhelming evidence that its proposed facility would be the least intrusive means of closing the identified coverage gap." *Id.* at 459. In reaching that conclusion, the court underscored the fact that the plaintiff had provided an affidavit from an RF engineer detailing why the proposed facility was the only feasible option to meet the relevant coverage needs and why other site locations were inadequate. *See id.* To demonstrate that other site locations were inadequate, the plaintiff submitted a chart to the planning board listing the alternate sites it had considered, some on its own initiative and others the planning board had suggested that it consider, followed by specific reasons it had rejected each site. *See id.* The plaintiff also reviewed two alternative technologies that the planning board had suggested during the application process and provided reasons why neither would be feasible to meet the area's coverage needs. *See id.* The court also noted that, throughout the entire application process, the plaintiff "accommodated Town officials' and Town residents' suggestions in an attempt to craft a less intrusive but still feasible plan," such as offering to design the town as a "tree-pole" to blend in which the surrounding area. *Id.* Lastly, the planning board, in issuing a negative SEQRA declaration with regard to the proposed project, found, among other things, that the site was "'well screened from the surrounding neighborhood'"; "'the location [would] be minimally noticed during the leaf on seasons'"; and the "'evergreen antenna [would] help mitigate visual impacts for leaf off times[.]'" *Id.*

A review of the record demonstrates that Defendant Town has failed to raise a triable issue of material fact with regard to whether Plaintiff's proposed facility would be the "least intrusive"

means of fulfilling the needs of the Gap Area. First, Plaintiff attempted to address Defendant

Town's and its residents' aesthetic concerns at every step of the application process, including

changing the original tower design from a "steel monopole" to a "stealth monopine tree" so that the

facility would more effectively blend in with the surrounding area at the site. *See* Dkt. No. 24-8,

Plaintiff's Memorandum of Law, at 34. Moreover, Defendant Town has admitted that the new

design would have a minimal visual impact because it (1) would be surrounded by a set of mature

trees that average 85 feet in height, with one tree reaching 100 feet, *see* Dkt. No. 24-3, Plaintiff's

Statement of Facts, at ¶¶ 26-27 (citing Brennan Aff., ¶¶ 28, 63, 76) (other citations omitted), ¶ 117

(citations omitted); (2) the tree screen would have a depth of between 35 feet and 120 feet on site,

*see id.* at ¶ 26 (citing Brennan Aff., ¶¶ 28, 63) (other citation omitted); ¶ 101 (citing Brennan Aff.;

¶ 63) (other citation omitted); (3) the facility would blend into the natural environment with

minimal visual impacts because it is only marginally taller than the surrounding trees and would be

the same height as at least one other nearby tree, *see id.* at ¶ 98 (citing Brennan Aff., ¶¶ 67, 76)

(other citation omitted); (4) the on-site stand of mature trees would effectively shield the facility

from view, *see id.* at ¶¶ 102-103 (citing Brennan Aff., ¶¶ 64, 75) (other citations omitted); ¶ 116

(citing Brennan Aff., ¶ 75) (other citation omitted); (5) the facility would be at least 700 feet from

the nearest residential structure and set back from all lot lines by a distance equal to at least 110% of

its height, *see id.* at ¶ 28 (citing Brennan Aff., ¶ 16; Andras Aff. at ¶ 12) (other citation omitted);

¶ 118 (citing Brennan Aff., ¶ 78) (other citation omitted); (6) it would not disturb any vegetation,

wetlands or historic resources, *see id.* at ¶¶ 30-31 (citing Brennan Aff., ¶¶ 32, 79, 80) (other

citations omitted); (7) Plaintiff modified the facility design and reduced its height to accommodate

aesthetic concerns, *see id.* at ¶ 34 (citing Brennan Aff., ¶ 17) (other citation omitted); and (8) a

visual impact analysis confirmed that the facility would be substantially screened from view and would not result in significant visual impacts even pre-modification, *see id.* at ¶¶ 87-94 (citations omitted).

Furthermore, Defendant Town issued a negative SEQRA declaration, which concluded, among other things, that "(1) [Plaintiff] reduced the tower height 'to the lowest possible height to still allow for the tower to be functional and serve its intended purpose'; (2) [Plaintiff] modified the Facility 'to align more aesthetically with the surrounding wooded land uses', as confirmed by 'an additional balloon test'; (3) 'other alternate locations would not provided [sic] the needed service to this specific area'; and (4) 'the proposed [project] . . . [would not] result in significant adverse environmental impacts.'" *See id.* at ¶ 133 (citing Brennan Aff., ¶ 87) (other citation omitted). In addition to these reasons and because Plaintiff has explained, and Defendant Town does not dispute, that no "preexisting structure" or further reduction in tower height would be feasible, the Court finds the Defendant Town has not raised a material issue of fact with regard to Plaintiff's claim that its proposed facility is the "least intrusive" means of meeting the Gap Area's coverage needs. Therefore, the Court grants Plaintiff's motion for summary judgment as to its "effective prohibition" claim.[4]

**D.      The appropriate remedy**

If a plaintiff demonstrates that there is substantial evidence in the record to support its application under the TCA, courts have found that the appropriate remedy is injunctive relief in the

_____

[4] Since the Court has granted Plaintiff's motion for summary judgment with regard to both Plaintiff's "substantial evidence" and "effective prohibition" claims, it does not need to address Plaintiff's federal preemption argument.

form of an order requiring the local authorities to grant the plaintiff's application. *See Town of Oyster Bay*, 2013 WL 4495183, at *20. In other words, "[a]lthough the TCA 'does not specify a remedy for violations of the cellular siting subsection,' . . . 'the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits.'" *T-Mobile Northeast LLC v. Inc. Vill. of E. Hills*, 779 F. Supp. 2d 256, 275 (E.D.N.Y. 2011) (quoting *Town of Oyster Bay*, 166 F.3d at 497) (collecting cases)); *see also Town of Fenton*, 843 F. Supp. 2d at 258 (noting that courts customarily grant injunctive relief and require the relevant zoning boards to issue necessary variances and permits).

In light of the foregoing, the Court concludes that injunctive relief is the appropriate remedy in this case. Therefore, the Court orders that Defendant Town issue all approvals and permits necessary to allow Plaintiff to construct and operate its proposed facility.

## IV. CONCLUSION

Having reviewed the entire record in this case, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendants immediately issue all approvals and permits necessary to allow

Plaintiff to construct and operate its proposed Communications Facility, including, without limitation, all building permits, site plan approvals, special use permits, and variances; and the Court further

ORDERS that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: February 6, 2019
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge